United States Courts
Southern District of Texas
FILED

OCT 15 2026

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAITH LE'ANN LITTLE, Plaintiff Pro Se | § | |
| | § | |
| versus | § | CIVIL ACTION NO. ___________ |
| | § | |
| SAM HOUSTON STATE UNIVERSITY, | § | |
| Defendant | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

ORIGINAL COMPLAINT

---

**Complaint for Civil Rights Violations**

## I. JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to 28 U.S.C § 1331 and Title VI of the Civil Rights Act of 1964 (42 U.S.C § 2000d et seq.), as this case arises under the Constitution and laws of the United States of America.
2. Venue is proper in the United States District Court for the Southern District of Texas Houston Division, pursuant to 28 U.S.C § 1391 (b)(1), because the Defendant is a public state university operating within this judicial district. Additionally, a substantial part of the events and statutory violations occurred entirely within this district.

## II. PARTIES

3. Plaintiff, FAITH LE'ANN LITTLE, is a resident of Houston, Harris County, Texas. Plaintiff was a graduate student enrolled in the Clinical Psychology Master

of Arts program at Sam Houston State University. Plaintiff maintains her electronic case notice address as FLLCaseInfo2026@gmail.com.

4. Defendant, SAM HOUSTON STATE UNIVERSITY, is a public institution of higher education established under the laws of the State of Texas, located at 1905 University Ave, Huntsville, Texas 77340. Defendant is a recipient of federal financial assistance, thereby binding its academic, administrative, and faculty agents to the statutory mandates of Title VI.

## III. STATEMENT OF FACTS

### A. Discriminatory Environment and Mentorship Inception

5. In the Spring of 2023, during the second semester of Plaintiff's master's degree at Defendant's university, Plaintiff was enrolled in the required Experimental Design course, taught by Defendant's faculty member, Dr. Gulden Esat. During the course, Plaintiff approached Dr. Esat about serving as her thesis mentor because Plaintiff intended to complete a thesis to strengthen her credentials for the purpose of applying to research-oriented doctoral programs.

6. During the initial meeting to discuss mentorship, Dr. Esat stated to Plaintiff, "I was surprised you asked me to be your mentor." When Plaintiff asked for clarification, Dr. Esat described prior experiences in which Black women had been rude and/or physically violent toward her; attributing those experiences to her identity as an immigrant. Plaintiff was surprised by these remarks but as a

first-generation college student navigating an unfamiliar graduate academic hierarchy, she chose to respond empathetically and continue the mentorship relationship.

7. By the end of the Spring 2023 semester, Plaintiff had individually completed an Experimental Design course assignment that Dr. Esat approved to serve as the foundation of Plaintiff's master's thesis research and subsequent data collection.

8. In the Fall of 2023, Dr. Esat taught Plaintiff's required Psychology of Diversity course. During a lecture attended by Plaintiff and seven other non-Black students, Dr. Esat stated that all Black students in her undergraduate courses were rude and undermined her authority because immigrants are viewed as "above" Black people in America. Dr. Esat presented this statement as an example of internalized racism experienced by Black individuals. Plaintiff, as the only Black student in the room and mentee of Dr. Esat, remained silent rather than challenge Dr. Esat's characterization of Black students as undermining her authority, as Plaintiff did not want to reinforce the very bias Dr. Esat was expressing. Instead, Plaintiff attempted to rationalize Dr. Esat's comments in order to protect her thesis track.

9. In November of 2024, Plaintiff was informed that Dr. Esat used the "N-word" slur during a Psychology of Diversity lecture with a subsequent graduate cohort, openly stating to the class that she "wouldn't use the word if Black people were around." Further, Dr. Esat, using Black people as an example, claimed that the use of the "N-word" by Black individuals is counterproductive to their community.

The students that experienced these remarks informed Plaintiff at a cohort party.

**B. Administrative Notice and Escalation**

10. Following the Fall of 2023 classroom incident, during the Spring of 2024 semester, Plaintiff sought administrative guidance from Dr. Hillary Langley, an associate chair of the Psychology & Philosophy department and Dr. Shelley Riggs, Director of the Clinical Psychology Master's Program. Plaintiff reported her concerns regarding Dr. Esat's statements about Black women and students and was advised to handle the conflict directly with Dr. Esat. Dr. Riggs specifically told Plaintiff that she could alternatively intervene "at a later time" for Plaintiff's safety in the program. On March 26th, 2024, Plaintiff met with Dr. Esat, who apologized for Plaintiff's hurt feelings, but Plaintiff did not understand the response as an acknowledgement that the statements themselves were inappropriate or discriminatory. At that time, Plaintiff had not yet been informed of the later disclosed classroom use of the "N-word".

11. During Fall 2024, after successfully completing and defending her master's thesis the previous summer, Plaintiff and Dr. Esat began drafting an additional manuscript based on Plaintiff's thesis dataset. During a Zoom meeting to prepare the manuscript, Dr. Esat determined that a confirmatory factor analysis (CFA) was necessary. After identifying this additional analytical requirement, Dr. Esat proposed developing a separate manuscript in collaboration with overseas researchers and stated that she would be its first author. Plaintiff subsequently learned and independently performed the required statistical analyses. Plaintiff initially accepted Dr. Esat's judgment regarding first authorship. As a first-

generation student who was new to research, Plaintiff trusted her mentor's assertion. Plaintiff encountered Dr. Esat in person on two occasions after the aforementioned meeting. During these casual encounters, Dr. Esat briefly asked Plaintiff whether she was "ok" with Dr. Esat being first author on the manuscript, a position she had already claimed. Plaintiff agreed on both occasions but later began questioning the ethical basis for the authorship arrangement, particularly because Dr. Esat had raised the issue again during brief, casual encounters. After revisiting the American Psychological Association's ethical standards for thesis research, Plaintiff emailed Dr. Esat to request a collaborative discussion about her initial agreement, which Plaintiff believed had been uninformed. Dr. Esat responded that "there isn't anything further to discuss" and stated, "Believe me, if I didn't deserve to be the first author, I would never claim it." In the same email exchange, Dr. Esat referenced the prior conflict concerning her comments about Black women and students, expressing apprehension about meeting because she "may say something that will be misinterpreted or dwelled upon later."

12. Plaintiff forwarded this email chain to Dr. Riggs (program director), and met with Riggs to discuss the issue after class the next day. Plaintiff discussed with Riggs her understanding of authorship ethics and sought administrative support in correcting Esat's behavior toward her. In response, Dr. Riggs said specifically that she would need to "see the study laid out" in order to confirm everyone's participation and perceived claim to authorship. Further, Dr. Riggs offered to set up a meeting with Plaintiff, Esat, and herself to aid in the discussion. However, Plaintiff considered Dr. Riggs's request to "see the study laid out" an unsatisfactory response. Given how Dr. Riggs had handled the initial conflict

between Plaintiff and Dr. Esat, Plaintiff felt it would be safer to involve another administrative authority.

13. On October 23rd, 2024, Plaintiff escalated the authorship dispute and her previously reported concerns of racial discrimination to Department Chair Dr. Jorge Varela. Plaintiff explained that the Fall of 2023 incident "was not properly addressed" and that she believed the prior incident appeared to be affecting Dr. Esat's decision-making concerning her thesis research. On October 25th, 2024, Dr. Varela met with Plaintiff to discuss her concerns. During this meeting Plaintiff reflected on the previous conversations concerning Esat's comments on Black women and students and also detailed the authorship dispute. During this meeting, Dr. Varela said he needed "time to think of what to do". Additionally, Dr. Varela stated that he would also need to "see the study laid out" in order to aid in the resolution of the dispute. This statement was a cause of alarm for Plaintiff and after approximately one week without a response from Dr. Varela, Plaintiff attempted to escalate the matter to the Dean of the College of Humanities and Social Sciences, Dr. Chien-pin Li. Plaintiff emailed her concerns regarding the racial incidents and authorship dispute, explaining that the unresolved matter was affecting her plans to apply to doctoral programs. The Dean's office did not arrange a meeting with Plaintiff and instead redirected her to the Associate Dean and Professor Dr. James Crosby.

**C. Administrative Response and Subsequent Adverse Actions**

14. On November 4th, 2024 Plaintiff met with Dr. Crosby after he reached out to her via email. Associate Dean Crosby subsequently reported the racist incidents to the SHSU Title IX compliance office. On November 8th, 2024, a representative from the Title IX office named Hayley contacted Plaintiff via telephone and declined to formalize an investigation, advising Plaintiff that the classroom incidents presented a "timing issue" due to the period elapsed since the remarks occurred. In direct response to this, Plaintiff emailed Associate Dean Crosby, stating that she felt institutional protections were lacking and expressing her willingness to allow the department an internal opportunity to address the issue without a formal investigation. Notably, when Plaintiff later requested her compliance files, the records contained no documentation of the oral "timing issue" defense, and a Title

IX representative later stated in an email that the file had been closed because Plaintiff failed to continue to pursue the matter.

15. The night before the scheduled grievance meeting, Dr. Esat terminated mentorship and participation in Plaintiff's manuscript production via email. The termination occurred shortly before the grievance meeting and before Plaintiff's planned doctoral application period. Plaintiff contends that the loss of the mentorship and manuscript collaboration deprived her of the opportunity to continue developing research credentials and to obtain a recommendation from Dr. Esat as her research mentor.

16. On November 15, 2024, Defendant convened a grievance meeting attended by

Drs. Crosby, Varela, and Riggs, and Plaintiff's chosen advocate, Dr. Diane Stoebner-May. Dr. Esat did not attend. At the beginning of the meeting, Dr. Varela stated that the authorship issue was "technically solved" because Dr. Esat had withdrawn and declared to Plaintiff, "You and I are not peers. You will not address me as Jorge." Plaintiff understood this statement to differ from her knowledge of other students who addressed him by his first name. During the meeting, Plaintiff also informed the administrators that students from a subsequent graduate cohort had reported Dr. Esat's use of the "N-word" during classroom instruction. Dr. Riggs nodded and made a note on her notepad following this disclosure.

17. During the grievance meeting, the administrators repeatedly questioned Plaintiff's communication style and professionalism in connection with her efforts to seek administrative resolution of her complaints. Dr. Riggs expressed concerns about Plaintiff's interactions with Drs. Varela and Crosby and raised the program's professional competency evaluations, stating, "I'm responsible for evaluating clinical APA competencies." Plaintiff, who had one final semester remaining in the program, understood these statements as raising the possibility that her competency evaluations could be affected by her conduct during the grievance process. Plaintiff ultimately apologized for any perceived disrespect toward the administrators. After later obtaining her student records, Plaintiff discovered a memorandum written by Dr. Riggs characterizing her conduct as "loud and angry."

18. Plaintiff's contemporaneous audio recording of the November 15, 2024 meeting provides a record of the discussion and Plaintiff's responses to the administrators' characterization of her conduct. The recording also includes Dr. Crosby stating that he did not personally interpret Plaintiff's conduct as disrespectful toward him.

19. During August of 2026, after Plaintiff had graduated from the program, Plaintiff learned from an Alumnus of her cohort that Program Director Dr. Riggs had excluded her from the invitation to an official alumni oversight meeting conducted in connection with the American Psychological Association accreditation site visit. Plaintiff contends that the exclusion prevented her from participating in a professional and institutional review process involving her former program and occurred after her prior complaints regarding racial discrimination and the university's handling of those complaints.

## IV. CAUSES OF ACTION

Title VI of the Civil Rights Act of 1964 mandates that: "*No Person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.*" 42 U.S.C. § 2000d. The Defendant's alleged discriminatory conduct, retaliation, and institutional responses violate this federal mandate under three distinct counts set forth below.

### Count I: Hostile Educational Environment (Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d)

20. Plaintiff incorporates paragraphs 1 through 19 by reference as if fully set forth herein.

21. Defendant Sam Houston State University is a recipient of federal financial assistance, legally binding its academic and administrative agents to the non-discrimination mandates of Title VI.

22. Defendant maintained a racially hostile educational environment within its Clinical Psychology graduate program through the conduct of its faculty member, Dr. Gulden Esat. As described in paragraphs 6 and 8, Plaintiff experienced racial stereotyping during her thesis mentorship and required coursework. Plaintiff alleges that these circumstances created a severe, pervasive, and objectively offensive educational environment that interfered with her ability to participate equally in the program.

23. Dr. Esat made disparaging statements concerning Black women during Plaintiff's initial mentorship meeting and characterized Black students as rude and undermining her authority during a required Psychology of Diversity lecture in which Plaintiff was the only Black student. Plaintiff subsequently learned from students in another graduate cohort that Dr. Esat had used a racial slur during classroom instruction. Plaintiff later reported this additional incident to university administrators.

24. Defendant's administrative officials received notice of Plaintiff's concerns regarding Dr. Esat's racial statements beginning in Spring 2024, with further reports and administrative escalation occurring in October and November 2024. Plaintiff alleges that Defendant failed to respond reasonably to the reported conduct in light of the known circumstances. The unresolved racial concerns,

together with the subsequent termination of Plaintiff's thesis mentorship and manuscript collaboration, impaired Plaintiff's access to research opportunities and the educational benefits associated with her graduate program.

**Count II: Unlawful Retaliation (Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d)**

25. Plaintiff incorporates paragraphs 1 through 24 by reference as if fully set forth herein.

26. Plaintiff engaged in protected activity by reporting concerns of racial discrimination involving Dr. Esat to university officials beginning in Spring 2024, escalating those concerns to Department Chair Dr. Varela on October 23, 2024, and reporting them to Associate Dean Dr. Crosby on November 4, 2024. Dr.

Crosby subsequently referred the discrimination allegations to the university's Title IX compliance office. These reports occurred separately from, and in connection with, Plaintiff's efforts to resolve the authorship dispute.

27. Following Plaintiff's discrimination reports and administrative escalation, Defendant's agents took actions that Plaintiff alleges were retaliatory. Dr. Esat terminated Plaintiff's research mentorship and manuscript collaboration shortly before the November 15, 2024 grievance meeting, despite her knowledge of Plaintiff's doctoral research goals. During that meeting, administrators questioned Plaintiff's communication style and professionalism, and Dr. Riggs raised Plaintiff's professional competency evaluations while Plaintiff had one semester remaining in her degree program. Subsequent actions included a memorandum

characterizing Plaintiff as "loud and angry" and Plaintiff's exclusion from an alumni oversight meeting associated with the program's APA accreditation site visit.

28. Defendant's conduct would dissuade a reasonable student from making further protected disclosures, was executed under the characterization of 'professionalism,' and resulted in significant disruption to Plaintiff's specialized psychology research track and future professional advancement.

**Count III: Institutional Deliberate Indifference (Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d)**

29. Plaintiff incorporates paragraphs 1 through 28 by reference as if fully set forth herein.

30. Defendant Sam Houston State University acts through its authorized administrative officials—including its Program Director, Department Chair, Academic Dean, Associate Dean, and Title IX Compliance Officers—who had actual notice of the reported racial discrimination and the authorship dispute but responded in a manner that was unreasonable and deliberately indifferent under the circumstances.

31. Rather than conducting a formal investigation into the reported faculty conduct, Defendant's Title IX office orally advised Plaintiff that the file would not proceed due to a 'timing issue' and subsequently asserted in written correspondence that the file was closed due to a failure to pursue the matter.

32. Furthermore, Defendant's department heads conducted the November 15th, 2024 grievance meeting to address Plaintiff's communication tone rather than resolving the reported discrimination, creating an environment where Plaintiff ultimately issued an apology while one final semester remained in her degree program. Defendant's failure to implement corrective measures constitutes deliberate indifference under applicable standards.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment against Defendant Sam Houston State University, granting the following relief:

A. A declaratory judgment that Defendant violated Plaintiff's rights under Title VI of the Civil Rights Act of 1964;

B. Appropriate equitable relief, including correction or removal of any student-record memorandum or notation determined to be retaliatory or materially inaccurate;

C. Compensatory damages in an amount to be proven at trial for identifiable financial losses directly attributable to Defendant's unlawful conduct, including educational expenses and economic losses resulting from the disruption of Plaintiff's research opportunities and professional advancement, including any loss of future earning capacity established by the evidence;

D. An award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b), and taxable litigation costs as permitted by law; and

E. Such other and further equitable or legal relief as this Court deems just and proper under applicable law.

## VI. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

## VII. DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury pursuant to 28 U.S.C § 1746 that the foregoing original complaint, factual allegations, and assertions are true and correct.

Executed on the 15th day of October 2026.

Respectfully submitted,

Faith Little

Faith Le'Ann Little, Plaintiff Pro Se
701 Cleveland St. Apt. 1309
Houston, TX 77019
Phone: (936) 294-6843
Email: FLLCaseInfo2026@gmail.com